## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **MICHELLE A. RAMOS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:23-cv-02502-SHL-atc** |
| | ) | |
| **MARLOWE'S INC., d/b/a MARLOWES** | ) | |
| **RIBS AND RESTAURANT; MELISSA** | ) | |
| **COLEMAN; MICHAEL COLEMAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFF'S MOTION TO AMEND

Before the Court are the Motion to Dismiss Plaintiff's Complaint, filed by Defendants Marlowe's Inc., Melissa Coleman, and Michael Coleman on September 8, 2023 (ECF No. 8), and Plaintiff Michelle Ramos's Motion for Leave to File Amended Complaint[1] that was filed in response to the Motion to Dismiss on December 4, 2023 (ECF No. 13). Defendants responded in opposition to the Motion to Amend on December 18, 2023 (ECF No. 18), and filed a Second Motion to Dismiss on January 25, 2024 (ECF No. 24). Ramos responded to the Second Motion to Dismiss on February 20, 2024 (ECF No. 25), and Defendants filed a reply on February 27, 2024 (ECF No. 27).

---

[1] Ramos's proposed Amended Complaint is included in this Motion. (ECF No. 13, at 3–14.) However, she neglected to include the first page of the proposed Amended Complaint in her filing on December 4, 2023. During the Scheduling Conference on January 4, 2024, the Court directed Ramos to file the first page of the Amended Complaint (ECF No. 20), and she did so on February 20, 2024 (ECF No. 26).

Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. For the reasons set forth below, it is RECOMMENDED that Defendants' Motions to Dismiss and Ramos's Motion to Amend be GRANTED IN PART AND DENIED IN PART.

## PROPOSED FINDINGS OF FACT

Ramos's original Complaint and proposed Amended Complaint[2] against Defendants allege racial discrimination in violation of 42 U.S.C. § 1983, racial discrimination in violation of 42 U.S.C. § 1981, gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), violations of the Thirteenth Amendment, violations of the First Amendment brought under § 1983, and gender and race discrimination in violation of the Tennessee Human Rights Act ("THRA"). (ECF Nos. 1, 13.) Ramos states that she worked as a "bartender/server" at Marlowe's Inc. ("Marlowe's") for twenty-one years before she was terminated on October 4, 2021. (ECF No. 13 ¶¶ 12, 13.) Marlowe's also employed her stepdaughter, Latinity Ray. (*Id.* ¶ 15.) Ramos alleges that, throughout her employment and up until her termination, restaurant owners Melissa Coleman and Michael Coleman "commonly" called her derogatory names such as "ni**ger and ghetto mexican from Chicago."[3] (*Id.* ¶ 14.)

Michael Coleman and Ramos began working the same shifts in 2021. Early that year, Ramos was involved in a verbal confrontation with her coworker Scott Emerson, a limousine

---

[2] The Proposed Findings of Fact are taken from Ramos's original Complaint and proposed Amended Complaint. As discussed below, for the purposes of this Report and Recommendation, the Court construes Ramos's complaints together and accepts her factual allegations as true.

[3] In her original Complaint, Ramos stated that the Colemans called her "ghetto girl from Chicago." (ECF No. 1 ¶ 14.) In her Amended Complaint she states that the Colemans called her a "ghetto mexican from Chicago." (ECF No. 13 ¶ 14.) The discrepancy between these allegations is immaterial for purposes of this Report and Recommendation.

driver for the restaurant. (ECF No. 13 ¶ 16.) Emerson and Michael Coleman were best friends at that time. (*Id.* ¶ 17.) Emerson allegedly was a "proud boy" and made comments on his Facebook page such as "black lives splatter," "if you support black lives matter un-friend me," and "if you support black lives matter you are the problem." (*Id.* ¶ 18.) On January 6, 2021, the day of the United States Capitol attack, Emerson "stepped into Plaintiff's face saying they were patriots and threatened her." (*Id.* ¶ 19.) Ramos later complained about the incident to the restaurant's general manager, Sally Jones. (*Id.* ¶ 20.) After that incident, Michael Coleman made additional derogatory remarks such as "we are not going to let n**gers in here to kill my son" when he was discussing with Ramos whether to relaunch karaoke nights. (*Id.* ¶¶ 21, 22.) When Michael Coleman learned that Ramos had "a legitimate business," he remarked "yeah, as legit as a n**gers bicycle." (*Id.* ¶ 23.) On another occasion, Michael Coleman stated "we don't want to hear no jungle music" when Ramos changed the radio station. (*Id.* ¶ 25.)

On September 17, 2021, Ray and Emerson had an altercation at Marlowe's resulting from their running into each other in the restaurant hallway. (*Id.* § 26.) The altercation resulted in Ray's termination on September 18, 2021, as well as a criminal investigation. (*Id.*) Then, on September 19, 2021, the Colemans met with Ramos to discuss that criminal investigation. (*Id.* ¶ 27.) The Colemans told Ramos to not talk about the incident. (*Id.* ¶ 28.) On September 30, 2021, Ramos informed Jones that Emerson had made another comment on his Facebook page about Black Lives Matter and referred to Memphis as "mempfrica." (*Id.* ¶ 29.)

On October 4, 2021, the Alcohol and Beverage Commission came to Marlowe's for an inspection, at which point Melissa Coleman terminated Ramos. (*Id.* ¶ 30.) Melissa Coleman gave Ramos a separation letter stating that "she was terminated due to a pending lawsuit Ray allegedly had against Defendants and her inability to remain neutral." (*Id.* ¶ 31.) Ramos alleges

that she would still be employed at Marlowe's if she was not a Black Mexican woman and had

not spoken up about "the discrimination [from] Scott and Michael." (*Id.* ¶ 32.)

## PROPOSED CONCLUSIONS OF LAW

**I.     Motion to Dismiss for Insufficient Process and Service of Process**

Defendants move for dismissal under Rules 12(b)(4) and 12(b)(5) for insufficient process

and service of process. (ECF No. 24-1, at 4.) Those rules allow a party to seek dismissal of a

complaint for failure to comply with the rules governing service of process. A Rule 12(b)(4)

motion challenges "'the form of process rather than the manner or method of service [and] is

proper only to challenge non-compliance with the provisions of Rule 4.'" *Rose v. Bersa*, 327

F.R.D. 628, 632 (S.D. Ohio 2018) (quoting *Garcia v. Rushing*, No. 4:11CV00734, 2012 WL

64601, at *1 (N.D. Ohio Feb. 28, 2012)). A Rule 12(b)(5) motion challenges the manner or

method of service of process and permits a court "to dismiss a complaint for insufficiency of

service of process." *Chase v. White*, No. 3:16-CV-01576, 2016 WL 7210155, at *4 (M.D. Tenn.

Dec. 13, 2016) (citing *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563

(E.D. Mich. 2006)). "When service of process is challenged, the burden rests with the plaintiff

to establish that service is properly made." *McGath v. Hamilton Loc. Sch. Dist.*, 848 F. Supp. 2d

831, 836 (S.D. Ohio 2012) (citing *Neely v. Eshelman*, 507 F. Supp. 78, 80 (E.D. Pa. 1981)). "In

deciding a motion to dismiss under Rules 12(b)(4) and (5), the court may refer to record

evidence in determining the sufficiency of service[,]' including 'uncontroverted affidavits.'"

*Hobson v. Billotte*, No. 3:21-cv-00405, 2021 WL 4342329, at *3 (M.D. Tenn. Sept. 23, 2021),

*report and recommendation adopted*, No. 3:21-cv-00405, 2021 WL 4847191 (M.D. Tenn. Oct.

18, 2021) (quoting *Metro. Alloys*, 416 F. Supp. 2d at 563).

Rule 4 governs summonses and how service of process may be effectuated. "Rule 4(c) requires that the 'summons . . . be served together with a copy of the complaint.' Further, '[t]he plaintiff is responsible for service of a summons and complaint within the time allowed under [Rule 4(m)].'" *Phillips v. Tenn. Hotel Supply*, No. 1:04-CV-353, 2006 WL 897985, at *2 (E.D. Tenn. Apr. 4, 2006) (citing Fed. R. Civ. P. 4(c)(1)). Under Rule 4, a summons must

> (A) name the court and the parties; (B) be directed to the defendant; (C) state the name and address of the plaintiff's attorney—if unrepresented—of the plaintiff; (D) state the time defendant must appear and defend; (E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint; (F) be signed by the clerk; and (G) bear the court's seal.

Fed. R. Civ. P. 4(a)(1). A court may allow an amended summons "to alleviate errors of a technical nature that are not misleading or prejudicial to the recipient of the document." 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1088 (4th ed. 2023).

For the following reasons, Ramos has not obtained service on any Defendant in compliance with these rules.

A.  Ramos has failed to effectuate service of process on Defendants in accordance with Rule 4(c).

Defendants assert that the amended summonses were not served with a copy of the complaint and were not directed to the correct addresses for individual defendants Melissa Coleman and Michael Coleman. (ECF No. 24-1, at 4–6; ECF No. 24-2 ¶ 4; ECF No. 24-3 ¶ 3.) They also contend they were not served within ninety days as required by Rule 4(m). (ECF No. 24-1, at 4–6.) Ramos responds that she served all Defendants by registered mail, that Defendants are aware of the complaint, and that they "are wasting judicial resources based on a possible technicality." (ECF No. 25 ¶¶ 2–3.) She requests that the Court order defense counsel to contact her about whether they will agree to waive service of process. (*Id.* ¶ 4.)

Based on the uncontroverted facts in the record, Ramos has not served Defendants with a copy of the complaint along with the summons as required by Rule 4(c). Ramos has neither refuted the Colemans' declarations—through a declaration or affidavit from her or otherwise— nor provided other proof that she served Defendants with a copy of the complaint. As a result, service is not in compliance with Rule 4(c).

B.      Marlowe's was not properly served in accordance with Rule 4(h).

Ramos has also failed to properly serve Marlowe's. Marlowe's is a corporation with its principal office located at 4381 Elvis Presley Boulevard in Memphis, Tennessee. Marlowe's therefore must be served with process

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant . . . .

Fed. R. Civ. P. 4(h)(1). The proof of service submitted as to Marlowe's indicates, however, that Ramos served Marlowe's via USPS certified mail. (ECF No. 14, 1.)

Ramos has not attempted service under Rule 4(h)(1)(A), and service on Marlowe's does not appear sufficient under Rule 4(h)(1)(B). Though the Federal Rules do not expressly allow for service by certified mail, Rule 4(e)(1) provides that service can be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." The Tennessee Rules, in turn, allow for service by certified mail:

> Service by mail of a summons and complaint upon a defendant may be made by the plaintiff, the plaintiff's attorney or by any person authorized by statute. . . . Such person shall send, postage prepaid, a certified copy of the summons and a copy of the complaint by registered return receipt or certified return receipt mail to the defendant. If the defendant to be served is an individual or entity covered by subparagraph (2), (3), (4), (5), (6), (7), (8), or (9) of this rule, the return receipt

6

> mail shall be addressed to an individual specified in the applicable subparagraph. .
> . . Service by mail shall not be the basis for the entry of a judgment by default
> unless the record contains either (a) a return receipt showing personal acceptance
> by the defendant or by persons designated by Rule 4.04 or statute; or (b) a return
> receipt stating that the addressee or the addressee's agent refused to accept
> delivery, which is deemed to be personal acceptance by the defendant pursuant to
> Rule 4.04(11).

Tenn. R. Civ. P 4.04(10).  Importantly, "Tennessee Rule of Civil Procedure 4.03(2) provides that

service by mail is only complete 'if the return receipt is signed by the defendant, or by a person

designated by Rule 4.04 or by statute.'"  *Tepe v. Whirlpool Corp.*, No.: 1:22-cv-136-KAC-SKL,

2022 WL 4288234, at *2 (E.D. Tenn. Sept. 12, 2022) (citing *Hall v. Haynes*, 319 S.W.3d 564,

577 (Tenn. 2010) (discussing "Rule 4.03's explicit restriction of who may sign the return

receipt")).

  "The language of Rule 4.03 'sets forth a mandatory requirement rather than a

discretionary ideal that need not be strictly enforced to confer jurisdiction over a party.'"  *Hall*,

319 S.W. at 577 (quoting *Estate of McFerren v. Infinity Transp., LLC*, 197 S.W.3d 743, 748

(Tenn. Workers Comp. Panel 2006)).  When the defendant to be served is a corporate entity, the

certified mail must be addressed to a registered agent or other agent authorized to accept service,

and the return receipt must be signed by a person authorized to accept service.  *Id.* at 583–84

(holding that a return receipt signed by an agent who was authorized to accept mail—but not

authorized to accept service of process—did not constitute adequate service under Rules 4.03(2)

and 4.04(10) (citations omitted)).

  Here, the summons and attached certified mail receipt are not addressed to any specific

person, and they do not identify the person who accepted service on behalf of Marlowe's.  (ECF

No. 14.)  The return receipt also does not include the date on which Marlowe's was served.  (*Id.*)

Defendants reviewed the tracking information for the return receipt provided by USPS and found

that "the summons to Marlowe's was 'delivered in/at mailbox' (and not to a person at

Marlowe's) on October 28, 2023 at 1:08 P.M." (ECF No. 24-1, at 7.) Melissa Coleman is an

owner of Marlowe's and is listed as Marlowe's registered agent with the Tennessee Secretary of

State. (ECF No. 24-2 ¶ 2.) Michael Coleman is also an owner of Marlowe's and has the

authority to accept service on its behalf. (ECF No. 24-3 ¶ 2.) Both state that they were not

working on October 28, 2023, and the signature is not theirs, nor do they recognize the signature.

(ECF No. 24-2 ¶¶ 6, 7, ECF No. 24-3 ¶¶ 2, 5.) Sally Jones, the general manager of the

restaurant, who is also authorized to accept service on behalf of Marlowe's, states that she too

was not working at the restaurant on October 28, 2023, the signature on the return receipt is not

hers, and she does not recognize the signature. (ECF No. 24-4 ¶¶ 2, 3.) Ramos does not refute

any of these facts and instead appears to ask the Court to excuse her failure to comply with the

service rules.[4] Because such compliance is required, however, and Ramos's attempted service

on Marlowe's by certified mail was not accepted by an officer or agent authorized to accept

service on behalf of Marlowe's, such service was insufficient.

      C.    <u>Melissa Coleman and Michael Coleman were not properly served in accordance
with Rule 4(e).</u>

Service on an individual within the United States may be effectuated by

(1) following state law for serving a summons in an action brought in courts of
general jurisdiction in the state where the district court is located or where service
is made; or

---

[4] Specifically, Ramos asks that the Court direct Defendants' counsel to "contact Plaintiff and
reveal whether they would waive service of process." (ECF No. 25 ¶ 4.) However, "nothing in
Rule 4 requires a defendant to forego traditional service and execute a waiver of service; the only
penalty for failing to waive service is set forth in Fed. R. Civ. P 4(d)(2)." *Baker v. Bannum
Place of Saginaw*, No. 09-cv-10360, 2010 WL 4788561, at *1 (E.D. Mich. Oct. 20, 2010), *report
and recommendation adopted*, 2010 WL 4788500 (E.D. Mich. Nov. 17, 2010); *see also Horn-
Brichetto v. Smith*, 3:17-cv-00163-JRG-DCP, 2018 WL 11610917, at *2 (E.D. Tenn. Sept. 26,
2018) ("If the defendant does not sign and return a waiver, the plaintiff must serve the defendant
pursuant to the requirements of Federal Rule of Civil Procedure 4." (quoting *Skinner v. City of
Memphis*, No. 09-cv-2071, 2012 WL 4742826, at *3 (W.D. Tenn. Sept. 30, 2012))).

(2) doing any of the following:
 (A) delivering a copy of the summons and of the complaint to the individual personally;
 (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
 (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  Pursuant to Tennessee Rule of Civil Procedure 4.04, an individual may be served:

> by delivering a copy of the summons and of the complaint to the individual personally, or if he or she evades or attempts to evade service, by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, whose name shall appear on the proof of service, or by delivering the copies to an agent authorized by appointment or by law to receive service on behalf of the individual served.

Tenn. R. Civ. P. 4.04(1).

Ramos has not served the Colemans in compliance with Rule 4(e)(2).  Ramos directed her amended summonses to Melissa Coleman and Michael Coleman at "4381 Elvis Presely [sic] Blvd., Memphis, Tennessee 38116."  (ECF No. 10.)  The proof of service on Melissa Coleman includes a certified mail receipt with the same address.  (ECF No. 14-1, at 1.)  Melissa Coleman states that neither she nor her husband reside at that address, which is not their personal address.  (ECF No. 24-2 ¶ 5.)  The amended summons issued to Michael Coleman was returned unexecuted.  (ECF No. 15.)  Again, Ramos does not refute any of these facts or otherwise provide proof of service in compliance with these rules.  As a result, neither Melissa nor Michael Coleman was served in accordance with federal or Tennessee law.

 D. <u>Ramos has not effected service of process on Defendants within the timeframe prescribed by the Rules.</u>

Rule 4(m) provides that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

Fed. R. Civ. P. 4(m).  Under Rule 4(m), "the Court must determine whether plaintiff has shown good cause for the failure to effect timely service.  If it has, 'the court shall extend the time for service for an appropriate period.'"  *Overbay v. Israel*, No. 2:16-cv-00337-TAV, 2017 WL 1377374, at *3 (E.D. Tenn. Mar. 24, 2017), *report and recommendation adopted*, No. 2:16-cv-337-TAV-mclc, 2017 WL 1373885 (E.D. Tenn. Apr. 13, 2017) (quoting *Collett v. Kennedy, Koontz & Farinash*, No. 3:14-cv-552, 2015 WL 7254301, at *3 (E.D. Tenn. Aug. 14, 2015)).  "[I]f a plaintiff has not shown good cause, the Court must either (1) dismiss the action without prejudice, or (2) direct that service be effected within a specified time."  *Id.*  "Good cause may exist if the defendant intentionally evades service[;] however, the plaintiff's failure to obtain proper service of process, even if inadvertent, is not enough to establish good cause."  *Slenzka v. Landstar Ranger, Inc.*, 204 F.R.D. 322, 324 (E.D. Mich. 2001) (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991)).  Nonetheless, courts have discretion to allow additional time for service to be perfected within a specified time regardless of whether good cause exists.  *Id.* at 325 (quoting *Wise v. Dep't of Defense*, 196 F.R.D. 52, 55 (S.D. Ohio 1999)).

Ramos has not complied with Rule 4(m).  As discussed above, Ramos has yet to properly serve any Defendant, and 274 days have passed since she filed her Complaint on August 14, 2023 (*see* ECF No. 1).  Nor has Ramos demonstrated good cause or provided any reason as to why she did not properly serve Defendants within ninety days of filing her Complaint.  Though, as Ramos argues, Defendants have knowledge of the Complaint, that fact "does not relieve Plaintiff from the obligation of showing that she has obtained proper service of process upon a defendant because Sixth Circuit law is clear that 'actual knowledge of a lawsuit [will not] substitute for proper service.'"  *Hobson*, 2021 WL 4342329, at *6 (quoting *LSJ Inv. Co., Inc. v. OLD, Inc.*, 167 F.3d 320, 324 (6th Cir. 1999)).  Indeed, "without proper service of process,

consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named

defendant." *Shelby v. PeopleReady*, No. 3:18-cv-00611, 2019 WL 2814668, at *1 (M.D. Tenn.

June 4, 2019), *report and recommendation adopted*, No. 3:18-CV-00611, 2019 WL 2764070

(M.D. Tenn. July 2, 2019) (quoting *King v. Taylor*, 694 F. 3d 650, 655 (6th Cir. 1999)). "[T]he

requirement of proper service of process 'is not some mindless technicality.'" *Friedman*, 929

F.2d at 1156 (quoting *Del Raine v. Carlson*, 826 F.2d 698, 704 (7th Cir. 1987)).

Nevertheless, the Court has the discretion to extend the time for service in the absence of

good cause. *See Bonds v. City of Ripley Police Dep't*, No. 2:18-cv-2362-MSN-dkv, 2019 WL

5095796, at *3 (W.D. Tenn. Mar. 25, 2019), *report and recommendation adopted as modified*,

2019 WL 4750596 (W.D. Tenn. Sept. 30, 2019) (collecting cases). In *Bonds*, after the Court

recommended granting a motion to dismiss the case without prejudice for insufficient service,

the plaintiff filed a response asking "that the Court deny dismissal of his case and allow him

additional time to make service on all Defendants." *Id.* at *3. In arriving at its decision to grant

additional time, the Court considered the following five factors:

> (1) whether a significant extension of time is required; (2) whether an extension
> of time would cause actual prejudice to the defendant other than the inherent
> "prejudice" in having to defend the lawsuit; (3) whether the defendant had actual
> notice of the lawsuit; (4) whether dismissal of the complaint without prejudice
> under Rule 4(m) would substantially prejudice the plaintiffs, i.e., cause the
> plaintiffs' suit to be time-barred by the statute of limitations; and (5) whether the
> plaintiffs have made diligent, good faith efforts to effect proper service of process.

*Id.* at *4 (quoting *Taylor v. Stanley Works*, No. 4:01-CV-120, 2002 WL 32058966, at *7 (E.D.

Tenn. July 16, 2002)); *see also Hardin v. City of Memphis Div. of Fire Servs.*, No. 2:19-cv-

02556-SHL-atc, 2021 WL 4237139, at *3 (W.D. Tenn. Aug. 23, 2021), *report and*

*recommendation adopted*, 2021 WL 4236617 (W.D. Tenn. Sept. 16, 2021) (applying these same

factors to recommend that the plaintiff be given fourteen additional days to serve the defendant, rather than recommending dismissal under Rule 12(b)(5)).

These factors weigh in favor of granting Ramos additional time. Ramos should need little additional time to serve Defendants. Defendants would not be prejudiced from an extension beyond having to defend the lawsuit, as they have been on notice of the lawsuit since at least August 24, 2023, when counsel appeared on their behalf. (ECF Nos. 6, 7.) Finally, though the Court cannot say that Ramos has been diligent, the record provides no indication that she acted without good faith when attempting to serve Defendants; in fact, her efforts provided some notice to them by virtue of their appearance in this case—though those efforts were lacking for purposes of adequate service under the Tennessee and Federal Rules. As such, the factors weigh in favor of giving Ramos another chance to perfect service on Defendants.

The Court recommends that the Rules 12(b)(4) and 12(b)(5) portions of the Motions to Dismiss be denied without prejudice and that Ramos be given an additional twenty-one days to effect adequate service upon Defendants. Service may be accomplished by complying with Tennessee Rules of Civil Procedure 4.03(2) and 4.04(10) or by employing another service method contemplated by the Tennessee and Federal Rules.

## II.    Motion to Amend the Complaint

Ramos seeks leave to file her proposed Amended Complaint (ECF No. 13), and Defendants oppose her Motion on the ground that amendment would be futile based on their Rule 12(b)(6) arguments set forth in their first Motion to Dismiss (ECF Nos. 8, 18). "[M]otions for leave to amend are reviewed under the deferential standard of Federal Rule of Civil Procedure 15, and the Court 'should freely give leave when justice so requires.'" *Porter v. AAR Aircraft Servs., Inc.*, 316 F.R.D. 691, 692 (W.D. Tenn. 2016) (quoting Fed. R. Civ. P. 15(a)(2)).

An exception to this forgiving standard is when a proposed amendment is futile. *Id.* (citing

*Pedreira v. Ky. Baptist Homes for Child., Inc.*, 579 F.3d 722, 729 (6th Cir. 2009)); *see also*

*Foman v. Davis*, 371 U.S. 178, 182, (1962). "A proposed amendment is futile if the amendment

could not withstand a Rule 12(b)(6) motion to dismiss." *Berry v. Regions Fin. Corp.*, 507 F.

Supp. 3d 972, 977 (W.D. Tenn. 2020), *appeal dismissed*, No. 21-5038, 2021 WL 1511687 (6th

Cir. Jan. 29, 2021) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512

(6th Cir. 2010). Denial of a motion to amend also "is appropriate where there is 'undue delay,

bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of the amendment, etc.'" *Joy v. Burchyett*, No. 1:21-cv-01190-STA-jay,

2022 WL 16787846, at *2 (W.D. Tenn. Nov. 8, 2022) (quoting *Benzon v. Morgan Stanley

Distribs., Inc.*, 420 F.3d 598, 613 (6th Cir. 2005)).

Here, Ramos filed her Motion to Amend and proposed Amended Complaint in response

to this Court's Order to Show Cause (ECF No. 11). Though Ramos missed her original deadline

to respond to Defendants' Motion to Dismiss, thus necessitating the Order to Show Cause, the

Court finds no other undue delay, dilatory motive, or undue prejudice to Defendants by virtue of

considering the proposed amendments. As such, the Court focuses its analysis herein on whether

Ramos's proposed amendments would be futile. That is, the Court will address whether the

claims in the proposed Amended Complaint, when construed together with the original

Complaint,[5] could withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See*

---

[5] For the purposes of this Report and Recommendation, the Court construes Ramos's complaints
together. Typically, "when plaintiff files [an] amended complaint, [the] new complaint
supersedes all previous complaints and controls [the] case from that point forward." *Parry v.
Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (citing *In re Atlas Van Lines,*

*Avery Outdoors, LLC v. Peak Rock Cap., LLC*, No. 16-cv-2229-SHL-tmp, 2017 WL 5186246, at

*3 (W.D. Tenn. Jan. 23, 2017) (setting forth and considering the Rule 12(b)(6) standard of

review when granting in part and denying in part a motion to amend the complaint). That

analysis is set forth in the next section.

### III.    Motion to Dismiss for Failure to State a Claim

Defendants move for dismissal of each of Ramos's claims under Rule 12(6) for failure to

state a claim. (ECF No. 24-1, at 4.) To determine whether an individual has stated a claim for

which relief may be granted, the Court applies the standards under Rule 12(b)(6), as articulated

in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the

claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal

citations and quotations omitted). The Court "construes the complaint in a light most favorable

to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly

suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir.

2012). Pleadings provide facial plausibility when they present "factual content that allows the

---

*Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000)). Nevertheless, in this case, given Ramos's *pro se*
status, the Court construes her proposed Amended Complaint together with the original
Complaint. *See Minner v. Shelby Cnty. Gov't*, No. 2:17-cv-2714-JPM-cgc, 2018 WL 4762136,
at *4 (W.D. Tenn. Oct. 2, 2018) (citing *Taylor-Merideth v. Metro. Gov't of Nashville &
Davidson Cnty.*, No. 3:16-cv-00612, 2017 WL 1164583, at *1 (M.D. Tenn. Mar. 28, 2017), for
the proposition that "[i]t is apparent to the Court that [Plaintiff] Taylor-Merideth likely did not
understand that her Amended Complaint would supersede the original Complaint, and that
therefore she needed to re-allege the facts entitling her relief. . . . In light of the lenient standards
afforded to *pro se* litigants at the pleading stage, the Court will construe the Complaints together
rather than require additional amendment."); *Leggett v. W. Express Inc.*, No. 3:19-cv-00110,
2020 WL 1161974, at *1 n.1 (M.D. Tenn. Jan. 6, 2020), *report and recommendation adopted
sub nom. Leggett v. W. Express Inc*, No. 3:19-cv-00110, 2020 WL 1158140 (M.D. Tenn. Mar.
10, 2020) (citations omitted) (same).

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards than a pleading filed by counsel." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see also Vandiver v. Vasbinder*, 416 F. App'x 560, 562 (6th Cir. 2011) (finding the less stringent standard applies to pro se complaints, "however inartfully pleaded"). Nevertheless, pro se litigants "are not exempt from the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*, 783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006)); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of pro se litigants. Not only would that duty be overly burdensome, but it would also transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."); *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*,

518 F.2d 1167, 1169 (6th Cir. 1975)). "A pro se complaint must still 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Shelby v. Greystar Mgmt. Servs.*, L.P., No. 2:17-cv-02650-SHM-cgc, 2018 WL 386647, at *2 (W.D. Tenn. Jan. 11, 2018) (quoting *Barnett v. Luttrell*, 414 F. App'x. 784, 786 (6th Cir. 2011)).

In her original Complaint and proposed Amended Complaint, Ramos brings claims for racial discrimination in violation of 42 U.S.C. § 1983, violations of the Thirteenth Amendment, violations of the First Amendment brought under § 1983, gender discrimination in violation of Title VII, racial discrimination in violation of 42 U.S.C. § 1981, and gender and race discrimination in violation of the THRA. (ECF Nos. 1, 13.) The Court will examine each of these claims to determine whether they survive Defendants' Rule 12(b) arguments.

A.    <u>Ramos's § 1983 claims and constitutional claims should be dismissed for failure to allege state action.</u>

Ramos alleges that Defendants engaged in race discrimination against her, thereby violating her equal protection rights under the Fourteenth Amendment. (ECF No. 13, at 6.) She also contends that Defendants violated her First and Thirteenth Amendment rights through their discriminatory conduct. (*Id.* at 10–12.) She brings her First and Fourteenth Amendment claims under § 1983, and she attempts to bring her Thirteenth Amendment court as a stand-alone claim.

Section 1983 imposes liability on an individual acting under color of state law for any "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Only claims against 'state actors' are eligible for relief under the statute." *Howell v. Father Maloney's Boys' Haven, Inc.*, 976 F.3d 750, 752 (6th Cir. 2020) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 940 (1982)). A private entity acting on its own without government action cannot deprive a person of a right provided by the Constitution.

*Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (citing *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149 (1978)).

Ramos's Complaints lack factual allegations that Marlowe's, Melissa Coleman, or Michael Coleman were acting under color of state law.  Ramos identifies the Colemans as "owner/manager or agent[s]" of Marlowe's restaurant, a private corporation.  (ECF No. 1 ¶¶ 7–9.)  Defendants are not government employers, nor are they state actors, and thus they cannot be held liable under § 1983.  Additionally, Ramos cannot state a stand-alone claim for violations of the Thirteenth Amendment (nor a § 1983 claim based on Thirteenth Amendment violations, though she does not appear to assert one) because "[t]he Amendment does not in any way address issues of employment discrimination allegedly based on race or nationality.  Although the Thirteenth Amendment provides the constitutional basis for claims arising under 42 U.S.C. § 1981 and other implementing statutes, it does not operate as an independent ground for a cause of action."  *Reyes v. Seaton Enterprises, LLC*, No. 1:07-cv-196, 2008 WL 2066447, at *3 (E.D. Tenn. May 13, 2008) (quoting *Lopez v. Sears, Roebuck & Co.*, 493 F. Supp. 801, 806–07 (D. Md. 1980)).  As a result, Ramos's First and Fourteenth Amendment claims brought under § 1983 and her stand-alone Thirteenth Amendment claim fail to state a claim, and Ramos's proposed amendments would be futile.  It is therefore recommended that these claims be dismissed with prejudice.

      B.    <u>Ramos's Title VII claim should be dismissed for failure to state a claim upon which relief can be granted.</u>

Ramos brings a claim for gender discrimination under Title VII.[6]  Title VII makes it unlawful for an employer to discharge "any individual, or otherwise to discriminate against any

---

[6] Ramos does not bring a Title VII claim for race discrimination.  Rather, she brings her race discrimination claim under § 1981, as discussed below.

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff may prove a claim of discrimination under Title VII with either direct or circumstantial evidence." *Jones v. Fed. Express Corp.*, 554 F. Supp. 3d 929, 935 (W.D. Tenn. 2021) (citing *Evans v. Walgreen Co.*, 813 F. Supp. 2d 897, 917 (W.D. Tenn. 2011)). Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must first make a circumstantial *prima facie* case of discrimination by demonstrating "(1) that he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that he was treated differently than similarly-situated employees from outside the protected class." *Id.* (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006)). Once the plaintiff has made a showing of discrimination, "the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for its actions." *Id.* (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).[7]

The Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), makes clear, however, that Title VII plaintiffs are not required to plead the elements of a *prima facie* case to survive a motion to dismiss. All that is required is that the complaint satisfies Federal Rule of Civil Procedure 8(a)'s simplified pleading standard. *Swierkiewicz*, 534 U.S. at 513. Rule 8(a) provides in relevant part that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "But where the well-pleaded facts do not permit the court to infer more than a mere possibility of

---

[7] The parties do not address the subsequent *McDonnell Douglas* steps after the *prima facie* first step.

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Defendants argue that Ramos has failed to allege any facts in her Complaints that she suffered any adverse employment action because of her gender. (ECF No. 8-1, at 8.) Ramos has not responded to Defendants' argument in her proposed Amended Complaint or otherwise. Though Ramos has pled that she is female and thus a member of a protected class (ECF No. 26, at 2), she has not alleged other facts related to her gender that might establish a Title VII claim. Indeed, the facts alleged in her Complaints with respect to employment discrimination relate solely to racial discrimination, but Ramos has not alleged a Title VII claim based on racial discrimination. Thus, Ramos has not adequately pled a claim of gender discrimination under Title VII. Furthermore, these claims against the Colemans individually fail because Title VII provides for no individual liability for business owners. *See Jennings v. Total Bus Care, Inc.*, No. 2:09-CV-12235, 2011 WL 1233488, at *3 (E.D. Mich. Feb. 14, 2011), *report and recommendation adopted in part, rejected in part*, No. 09-12235, 2011 WL 1239777 (E.D. Mich. Mar. 30, 2011) ("Title VII does not create individual liability for either supervisory agents of the employer or owners of the business.") (quoting *Matthews. Marten Transp., Ltd.*, 354 F. Supp. 2d 899, 903 (W.D. Wis. 2005))). Ramos's Title VII gender discrimination claims should therefore be dismissed.

C.    Ramos's § 1981 race discrimination claim should be allowed to proceed.

Ramos alleges that Defendants engaged in race-based employment discrimination against her in violation of § 1981. In relevant part, 42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." To "'make and enforce contracts' includes the making,

19

performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b); *see also Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006). To state a claim under § 1981, a plaintiff must plausibly allege that "(1) the plaintiff belonged to a protected class; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in § 1981(a)." *Inner City Contracting, LLC v. Charter Twp. Of Northville, Mich.*, 87 F.4th 743, 755 (6th Cir. 2023) (quoting *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006)). "The second prong, regarding intentional discrimination, can be shown through either direct evidence of discrimination or circumstantial evidence 'which would support an inference of discrimination.'" *Id.* (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000)). To satisfy the third prong, "a plaintiff must initially plead . . . that, but for race, it would not have suffered the loss of a legally protected right." *Id.* at 756 (quoting *Comcast Corp. v. Nat'l Assoc. of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020)).

"Section 1981 provides 'a federal remedy against discrimination in private employment on the basis of race.'" *Wright v. Memphis Police Ass'n, Inc.*, No. 14-2913-STA-dkv, 2015 WL 3407358, at *6 (W.D. Tenn. May 26, 2015) (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975)). "That [plaintiff does] not identify a written contract is inconsequential; Tennessee enforces oral at-will employment contracts." *VanHoose v. Waupaca Foundry, Inc.*, No. 1:17-cv-248, 2018 WL 4945218, at *6 (E.D. Tenn. Jan. 23, 2018) (quoting *Woodall v. DSI Renal, Inc.*, No. 11-cv-2590, 2012 WL 1038626, at *7 (W.D. Tenn. Mar. 27, 2012)); *see also Henry v. Trammell Crow SE, Inc.*, 34 F. Supp. 2d 629, 635 (W.D. Tenn. 1998) (recognizing that, "[u]nder Tennessee law, the employer-employee relationship is contractual in nature" and holding that at-will employees can recover for race discrimination under § 1981).

Defendants argue that Ramos has failed to adequately plead that, but for her race, she would not have been discharged. (ECF No. 18-1, at 9.) However, the facts in Ramos's proposed Amended Complaint, when accepted as true at this stage, adequately allege the elements of a circumstantial-evidence § 1981 claim. Ramos has alleged that she is "African-American/Latino Hispanic," that each of the Defendants directly and intentionally engaged in numerous discriminatory actions against her based on her race, and that she was ultimately fired because of her race. (ECF No. 13, at 3–8.) Those allegations are sufficient at this stage for Ramos's § 1981 claim to survive Defendants' Motion to Dismiss.[8] The Court thus recommends that Ramos's § 1981 claim against Defendants be allowed to proceed.[9]

D.      Ramos's THRA race-discrimination claim against Marlowe's should be allowed to proceed.

Ramos's THRA claims simply incorporate her earlier assertions of employment discrimination and do not include any additional allegations. (ECF No. 13, at 13.) THRA claims are analyzed under the same *McDonnell Douglas* framework that applies to Title VII claims. *Reed v. Proctor & Gamble Mfg. Co.*, 927 F. Supp. 2d 508, 526 (W.D. Tenn. 2013) (citations omitted). For the reasons discussed above, to the extent Ramos attempts to bring a THRA claim

---

[8] The parties do not address whether Ramos's allegations might adequately state a direct-evidence claim of race discrimination under § 1981. The Court will not *sua sponte* address the viability of a direct-evidence claim, as the Court recommends that Ramos's § 1981 claim should proceed.

[9] Unlike Title VII claims, claims for race discrimination under § 1981 may be brought against individuals. *See Campbell v. CCL Custom Mfg., Inc.*, No. 03-cv-2789B, 2006 WL 222814, at *11 (W.D. Tenn. Jan. 30, 2006) ("The law is clear that individuals may be held liable for violations of § 1981. . . . [T]o establish individual liability under Section 1981, [Plaintiff] must prove that the Defendants' discrimination was intentional and that they were personally involved in the discriminating conduct.") (collecting cases). As discussed above, Ramos has sufficiently pled a § 1981 claim against both Marlowe's and the Colemans individually.

on the basis of sex discrimination, that claim should be dismissed for failure to plead any
supporting facts.

With respect to her race-discrimination allegations, though Ramos only re-incorporates
her previous allegations when listing her THRA claim (ECF No. 13 ¶ 77), those allegations are
sufficient at this stage.  Ramos has pled membership in a protected class based on her race, an
adverse employment action, qualification for her position, and disparate treatment as compared
to other employees outside her protected class.  As a result, Ramos's THRA claim based on race
discrimination against Marlowe's should be allowed to proceed at this stage.  However, like Title
VII, the THRA provides for no individual liability, such that the THRA claims against the
Colemans should be dismissed with prejudice.  *See* Tenn. Code Ann. § 4-21-301(b).

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Motions to Dismiss and the
Motion to Amend be GRANTED IN PART AND DENIED IN PART.  Specifically, the Court
recommends that Ramos's proposed Amended Complaint (ECF No. 13, at 3–14; ECF No. 26, at
2) be deemed the operative Complaint in this case but that she be allowed to proceed on only (1)
her § 1981 race discrimination claim against Defendants and (2) her THRA race discrimination
claim against Marlowe's.  Ramos's other claims in her Amended Complaint should be
dismissed.  The Court also recommends that Ramos be given an additional twenty-one days to
effectuate adequate service upon Defendants.

Respectfully submitted this 14th day of May, 2024.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute forfeiture/waiver of objections, exceptions, and further appeal.